IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELO C. BORIA, SR., | : | CIVIL ACTION |
| on his own behalf, and as Co- | : | |
| Administrator of the Estate of Angelo | : | |
| C. Boria, Jr., et al., | : | |
| Plaintiffs | : | 06-4384 |
| | : | |
| vs. | : | |
| | : | |
| OFFICER ROBERT BOWERS, et al., | : | |
| Defendants | : | |

M E M O R A N D U M

**STENGEL, J.**                                                                 September 17, 2007

In the late evening of October 1, 2004, police officers responded to a report of an accidental discharge of a shotgun at a private residence in the City of Reading. Within an hour, Angelo C. Boria, Jr., a resident of the home, was pronounced dead at Reading Hospital Medical Center. Mr. Boria's parents brought this case on their own behalf individually, and as Co-Administrators of their son's estate, against the Reading Defendants,[1] the County of Berks, and the Berks County Coroner. The parents' claims include constitutional violations pursuant to 42 U.S.C. § 1983, negligence and negligent supervision, survival action, wrongful death action, intentional infliction of emotional distress, and negligent infliction of emotional distress. Edward L. Courtney, Jr., the owner of the residence, has also joined in this suit. His claims include constitutional

---

[1] The Reading Defendants include two named police officers, ten unnamed police officers, the City of Reading, its Mayor, and its Chief of Police.

violations pursuant to 42 U.S.C. § 1983, negligence and negligent supervision, intentional infliction of emotional distress, negligent infliction of emotional distress, false arrest, and false imprisonment. The plaintiffs seek compensatory and punitive damages in an amount in excess of $150,000, reasonable costs and fees, and injunctive relief as appropriate.

The Reading Defendants filed a motion to dismiss many of these claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, I will grant the motion in part and deny it in part.

## I. BACKGROUND [2]

When the police officers arrived at the residence, they found Mr. Boria lying on the floor in a "prone" position with his hands "at the small of his back." A shotgun was also on the floor at least eight feet away from him. Compl. at ¶¶ 16-19. While in the process of handcuffing Mr. Boria, the officers began to beat him with fists, flashlights, and batons without provocation or justification, and continued to punch him after pulling him to his feet, handcuffed. Id. at ¶¶ 20-21. As he was being taken to the door, Mr. Boria informed the officers that he had no intention of resisting them, that he was recovering from a recent injury, and that he could not walk without the assistance of crutches. Id. at ¶ 22. Notwithstanding these statements, the officers pulled the handcuffed Mr. Boria to

---

[2] All facts are taken from the plaintiffs' Complaint, and for purposes of this motion, are accepted as true with all reasonable inferences drawn in favor of the plaintiffs.

his feet, pushed him out of the door and down the steps to the sidewalk where he struck his head.  They dragged him down the street toward a waiting police vehicle.  Halfway down the block, Mr. Boria "collapsed to the ground and was viciously and repeatedly struck by cursing police officers."  Id. at ¶¶ 23-25.  Although Mr. Boria had lost consciousness, he was "hogtied," thrown face down onto a metal dolly, rolled down the street, and thrown into the police vehicle.  Id. at ¶¶ 24-28.  At that time, Mr. Boria was silent, his skin was ashen in color, and there were no breath sounds or movements.  Id. at ¶ 29.  The police officers forbade Reading emergency medical technicians, who had already arrived on the scene, from attending to Mr. Boria despite the voiced concerns of bystanders.  After approximately ten minutes and in response to increasing concern from the crowd, the police officers began to slap Mr. Boria's face in an attempt to arouse him.  A motionless and grey Mr. Boria was then transferred from the paddy wagon to the ambulance after the attempts at revival proved unsuccessful.  Id. at ¶¶ 30-35.  He was rushed to Reading Hospital Medical Center where he was pronounced dead at 11:20 p.m.  Id. at ¶¶ 36-39.

   After the departure of the ambulance, police officers returned to Mr. Courtney's residence and began to ransack it, overturning and breaking furniture and other personal property, allegedly to fabricate the appearance of an intense struggle to justify the deadly force and to cover up the officer's wrongdoing.  Id. at ¶¶ 40-41.  Mr. Courtney was present at the home and objected to these actions but was told to "shut up" by the police

officers. After continually objecting, Mr. Courtney was handcuffed and taken into custody. He was held at the police lockup for five hours before being told that he had been mistakenly arrested, and was released with the understanding that another such arrest would occur if he related his observations of the police misconduct to anyone. Id. at ¶¶ 43-44.

The Berks County Coroner performed an autopsy and attributed Mr. Boria's death to "cocaine toxicity with excited delirium aggravated by physical struggle." Id. at ¶¶ 46-47. The coroner ignored and even denied the existence of massive bruising of Mr. Boria's body. Id. at ¶ 47.

## II.   STANDARD FOR MOTIONS TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." The rule is designed to screen out cases where "a Complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted." Port Auth. v. Arcadian Corp., 189 F.3d 305, 311-312 (3d Cir. 1999). Under Rule 12(b)(6), a pleading should not be dismissed for failure to state a claim unless it appears beyond doubt that the non-moving party can prove no set of facts in support of its claim which would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The issue, therefore, is not whether the non-moving party will ultimately prevail, but whether it is entitled to offer evidence to

support its claims.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

In considering whether a pleading should be dismissed for failure to state a claim upon which relief can be granted, a court must consider only those facts alleged in the pleading and accept all of the allegations as true, drawing all reasonable inferences in favor of the non-moving party.  ALA v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); see also Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004) (in deciding motions pursuant to Rule 12(b)(6), courts generally consider only allegations in the pleading, exhibits attached to the pleading, matters of public record, and documents that form the basis of a claim).

**III.  DISCUSSION**

The Reading Defendants first argue that the Section 1983 claims[3] against the Mayor and Chief of Police should be dismissed because:  (1) the plaintiffs have not asserted that these two defendants were personally involved in the events which led to Mr. Boria's death, and thus they cannot be sued in their individual capacities; and (2) claims against the two defendants in their official capacities are duplicative of claims against the City of Reading.

Title 42 of the United States Code § 1983 provides remedies for deprivations of

---

[3] These claims include the deprivation of rights established by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and Article I, § 8 of the Pennsylvania Constitution.

rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights. Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). Section 1983 provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.[4]

Thus, in evaluating § 1983 claims against municipal actors, the Supreme Court has set forth two threshold inquiries: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981); see also Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (same); Mark v. Borough of Hatboro, 51 F.3d

---

[4] Paragraph 54 of the plaintiffs' Complaint states, "The actions of all Defendants, collectively and individually, in response to the incident, deprived [Mr. Boria] of his constitutional rights as guaranteed by the United States Constitution, especially the Fourth and Fourteenth Amendments as well as Article I, Section 8 of the Pennsylvania Constitution and 42 U.S.C. § 1983." Section 1983 only provides remedies for the deprivation of rights established in the United States Constitution and federal law, not those of the states. Furthermore, the issue of availability of damages for violation of the Pennsylvania Constitution is an unsettled question of law not yet ruled upon by the Supreme Court of Pennsylvania. The Commonwealth Court, however, held that "there is no separate cause of action for monetary damages for the use of excessive force in violation of Article I, Section 8 of the Pennsylvania Constitution." Jones v. City of Philadelphia, 890 A.2d 1188, 1208 (Pa. Commw. 2006). Thus, I will strike reference to alleged violations of the Pennsylvania Constitution, should such a private cause of action exist, as improperly presented here.

1137, 1141 (3d Cir. 1995).  A municipality can also be held liable for § 1983 violations when municipal employees, such as police officers, unconstitutionally apply an otherwise valid policy as a result of improper or inadequate training, or a "failure to train."  See City of Canton v. Harris, 489 U.S. 378, 387 (1989).  In order for a municipality's failure to train to be actionable under § 1983, it must amount to "deliberate indifference" to the rights of the persons with whom police officers come into contact, and it must be shown to be a part of city policy.  Id. at 389-90.

In suits against municipal employees who act in a supervisory capacity, the Supreme Court has differentiated between claims against those individuals in their personal (individual) capacities and their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  Personal capacity suits seek to impose liability on government officials for acts performed under color of law.  Id.  Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  Id. (quoting Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658, 690, n. 55 (1978)).  Here, the plaintiffs are expressly suing the Mayor and the Chief of Police in both their personal capacities and their official capacities.

The Supreme Court has held that official capacity suits cannot be maintained against state officers acting in their official capacity on behalf of the state.  See Hafer v. Melo, 502 U.S. 21, 27 (1991) (state officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government

that employs them) (citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989)); see also Powell v. Ridge, 189 F.3d 387, 401 (3d Cir. 1999).  Here, the plaintiffs have included the City of Reading as a defendant in this action.  Thus, I will strike that portion of the Complaint which references the Mayor and the Chief of Police as defendants being sued in their official capacities.

However, an official sued under § 1983 in a personal capacity action can be held liable if he acted under color of law to deprive a person of a federal right.  See Hafer, 502 U.S. at 27; Powell, 189 F.3d at 401; Graham, 473 U.S. at 166.  The Third Circuit has expressly applied the standards for municipality liability for § 1983 violations to cases alleging individual liability.  See Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) ("…the standard of individual liability for supervisory public officials will be found to be no less stringent than the standard of liability for the public entities that they serve.  In either case, a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person' - whether a natural one or a municipality - has exhibited deliberate indifference to the plight of the person deprived") (internal citations omitted)); see also Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001).

There are two theories of supervisory liability under which a plaintiff can sue a municipal defendant in a personal capacity action.  See A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 578 (3d. Cir. 2004).  Under the first theory, defendants can be sued as policy-makers "if it is shown that such defendants, 'with deliberate indifference to

the consequences, established and maintained a policy,[5] custom,[6] or practice which directly caused [the] constitutional harm.'" Id. (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989). The second theory provides for personal liability if plaintiffs can show that a supervisor "participated in violating their rights, or that he directed others to violate them, or that he…had knowledge of and acquiesced in his subordinates' violations." Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)). There is no liability for personal capacity actions based only on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Monell, 436 U.S. at 693.

Thus, for the plaintiffs to be successful in their personal capacity claims against the

---

[5] A municipal policy, for purposes of § 1983, is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a government] body's officers." Monell, 436 U.S. at 690; see also Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) ("Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.") (citation omitted). Such a policy "generally implies a course of action consciously chosen from among various alternatives." Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). Limiting liability to identifiable policies ensures that municipalities are only liable for "deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Brown, 520 U.S. at 403-04.

[6] A custom, while not formally adopted by the municipality, may lead to liability if the "relevant practice is so widespread as to have the force of law." Brown, 520 U.S. at 404. This requirement should not be construed so broadly as to circumvent Monell: "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy..." Oklahoma City v. Tuttle, 471 U.S. 808, 823-824 (1985).

Mayor and the Chief of Police, they will have to show that these defendants were policy-makers in the City of Reading who established or maintained policies, customs, or practices which directly caused the constitutional harm to the plaintiffs, and that they did so with deliberate indifference to the consequences; or that these defendants personally participated in violating the constitutional rights of the plaintiffs, or directed others to violate those rights, or had knowledge of and acquiesced in the violations of their subordinates.

While it is not likely that the Mayor of the City of Reading or its Chief of Police personally participated in the attack on Mr. Boria, or the other behavior alleged in the Complaint, it is premature to preclude the plaintiffs from exploring the theories of individual liability for these two public officials as described above.  Thus, I will deny the motion to dismiss the Section 1983 claims against the Mayor and the Chief of Police.

The Reading Defendants also argue that the plaintiffs' Eighth Amendment claims should be barred because the Cruel and Unusual Punishment Clause of that Amendment does not apply until after sentence and conviction, and Mr. Boria was only in the initial stage of possible criminal proceedings.  In their Response to the motion, the plaintiffs acknowledged "that any rights available to [Mr. Boria] under the Eighth Amendment would only be a subset of those available to [Mr. Boria] pursuant to the Fourteenth Amendment."  The plaintiffs then withdrew any Eighth Amendment claims.

Next, the defendants argue that the City of Reading, its Mayor, and its Chief of

Police are immune from the derivative state law tort claims by virtue of the Pennsylvania Political Subdivision Tort Claims Act (the "Act"), 42 PA. CONS. STAT. § 8541, *et seq*. The Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."[7] 42 PA. CONS. STAT. § 8541. An employee of a local agency is liable for civil damages only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter. Id. at § 8545. Notwithstanding the immunity the Act provides, liability may be imposed on a municipality or its employees where (1) damages would be recoverable at common law or under a statute creating a cause of action if the injury were caused by a person not protected by immunity, and (2) the claim falls within one of the statutory exceptions to governmental immunity in Section 8542(b) of the Act. Granchi v. Borough of N. Braddock, 810 A.2d 747, 749 (Pa Commw. 2002). These exceptions pertain to: (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) care, custody or control of animals. See 42 PA. CONS. STAT. § 8542(b). Because these exceptions do not apply here, the City of Reading, as a local agency, is immune from liability for the state tort actions as alleged in Counts II through VI of the Complaint. I will therefore

---

[7] A local agency is defined in the Act as a "government unit other than the Commonwealth government." 42 PA. CONS. STAT. § 8501.

dismiss the City of Reading as a defendant in those Counts.[8]

Nevertheless, the Act provides for another exception to governmental immunity which is applicable to the City of Reading's Mayor, its Chief of Police, and the police officers sued in their individual capacities:

> [i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 PA. CONS. STAT. § 8550.

Thus, a municipal employee may be held liable where the actions of the state actor constitute a crime, actual fraud, actual malice, or willful misconduct. In the context of police misconduct, the Pennsylvania Supreme Court has held that in order to show willful misconduct, the individual actor must also have committed an intentional tort. Renk v. Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). The Third Circuit interpreted Pennsylvania law to hold that willful misconduct has the same meaning as "intentional tort" in the context of public employee immunity under the Act. See Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (citing Delate v. Kolle, 667 A.2d 1218, 1221 (Pa. 1995). Police activity falls under this exception when an officer "willfully went beyond the

---

[8] Thus, I will also strike from the Complaint all reference in Counts II through VI to the Reading Defendants being sued in their official capacities. See 42 PA. CONS. STAT. § 8545.

12

bounds of the law." Renk v. Pittsburgh, 641 A.2d at 291-92. More specifically, it is "misconduct which the perpetrator recognized was misconduct and which was carried out with the intention of achieving exactly that wrongful purpose." Africa v. City of Philadelphia, 938 F. Supp. 1264, 1273 (E.D. Pa 1996); see also Ehly v. City of Philadelphia, No. 03-3634, 2004 U.S. Dist. LEXIS 23493 at *12 (E.D. Pa 2004) (granting defendants' summary judgment motion with respect to intentional tort claims against defendants not present at the scene of the alleged assault).

While the plaintiff should have the opportunity to explore the various theories of individual § 1983 liability for the Mayor and the Chief of Police, the same opportunity is not warranted here. The Complaint alleges no facts that either the Mayor or the Chief of Police were present at the scene on the night of the beating, or that either defendant had any contact with Mr. Boria that night. Further, there is no allegation of behavior on the part of these two defendants that would have constituted a crime, actual fraud, actual malice, or willful misconduct. Thus, the exception to the governmental immunity provided by the Act does not pertain to the Mayor or the Chief of Police, and I will dismiss them as defendants in Counts II through VI.

The Reading defendants next argue that the Act provides the same immunity to Officer Bowers and Officer Hogan as defendants in Counts II and VI, for negligence and negligent supervision, and negligent infliction of emotional distress, respectively.

As described above, the exception to the rule of governmental immunity is

triggered by willful misconduct which for police activity involves an intentional act that "willfully went beyond the bounds of law." <u>Renk v. Pittsburgh</u>, 641 A.2d at 291-92. Mere negligence or deliberate indifference is not sufficient to break through governmental immunity on the grounds of willful misconduct. <u>Owens v. City of Philadelphia</u>, 6 F.Supp.2d at 395.

     Here, the behavior alleged in Counts III, IV, and V of the Complaint qualifies for the exception provided by the Act. The allegations of severe beating, subsequent intentional withholding of available medical care on the scene, and deliberate destruction of property to feign an intense struggle would constitute the behavior contemplated by the Act, if proven by the plaintiffs. The actions alleged in Counts II and VI are based in negligence. Thus, I will dismiss Officer Bowers and Officer Hogan as defendants in only those two Counts.

     An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGELO C. BORIA, SR., et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| | : | |
| **vs.** | : | **06-4384** |
| | : | |
| **OFFICER ROBERT BOWERS, et al.,** | : | |
| **Defendants** | : | |

**O R D E R**

**AND NOW,** this     17th     day of September, 2007, upon consideration of defendants' motion to dismiss (Document #10), and the plaintiffs' response thereto (Document #15), it is hereby ORDERED that the motion is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that:

1. All reference to the Mayor of the City of Reading and its Chief of Police being sued in their official capacities is STRICKEN;

2. The portion of the motion seeking the dismissal of all Section 1983 claims against the Mayor and the Chief of Police is DENIED;

3. All Eighth Amendment claims are WITHDRAWN;

4. The portion of the motion seeking the dismissal of the City of Reading as a defendant in Counts II through VI is GRANTED; all reference in Counts II through VI to Officers Bowers and Hogan being sued in their official capacities is STRICKEN;

5. The portion of the motion seeking the dismissal of the Mayor and the Chief of Police as defendants in Counts II through VI is GRANTED;

6. The portion of the motion seeking the dismissal of Officer Bowers and Officer Hogan as defendants in Counts II and VI is GRANTED;

7. All reference to 42 U.S.C. § 1983 providing a remedy to alleged violations of Article I, § 8 of the Pennsylvania Constitution is STRICKEN.

BY THE COURT:

/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.